UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————

UNITED STATES OF AMERICA,

v.

DAVID LETTIERI,

              Defendant.

———————————————

1:21-CR-00020 – LJV-MJR

REPORT, RECOMMENDATION
AND ORDER

This case has been referred to the undersigned by the Honorable Lawrence J. Vilardo pursuant to 28 U.S.C. §636(b)(1) to handle all pre-trial matters and to make a recommendation as to all suppression motions. Before the Court are omnibus motions by defendant David Lettieri ("Defendant"), including motions to suppress evidence, a motion to dismiss, and various discovery demands. (Dkt. No. 24). The Government also filed a cross-motion for discovery. (Dkt. No. 26). For the following reasons, it is recommended that defendant's motions to suppress and motion to dismiss be denied. The Court's decisions as to defendant's and the Government's various discovery demands are also set forth in detail below.

## BACKGROUND AND PROCEDURAL HISTORY

On February 10, 2021, a grand jury returned a single-count Indictment charging defendant David Lettieri with enticement of a minor, in violation of Title 18, United States Code, Section 2422(b). (Dkt. No. 11).

Defendant has filed omnibus pre-trial motions seeking to suppress evidence and to dismiss the indictment, as well as making additional discovery demands. (Dkt. No. 24).

The Government filed a response to defendant's motions and made a cross-motion for reciprocal discovery. (Dkt. No. 26).

The Court heard oral argument on the motions on August 20, 2021. An evidentiary hearing regarding defendant's motion to suppress statements was scheduled for September 15, 2021. The hearing was twice adjourned upon request of defendant. (Dkt. Nos. 29; 31). On December 14, 2021, the Court received a motion from defense counsel, James Q. Auricchio, Esq., requesting an order pursuant to 18 U.S.C. § 4241(a) and the Federal Rules of Criminal Procedure for an examination and hearing to determine defendant's competency to stand trial. (Dkt. No. 33). On January 4, 2022, the Court held a status conference and granted the motion for competency evaluation. Shortly thereafter, the Court issued an Order for Competency Evaluation of the defendant. (Dkt. No. 36). On March 3, 2022, another conference was held, at which the Court reviewed the competency report of Rory P. Houghtalen, M.D. Based upon that report, the Court found the defendant to be mentally competent to stand trial. At that time, the Court also granted defendant's request for new counsel and appointed the Federal Public Defender's Office to represent him.

A status conference was held on April 21, 2022, during which defendant's appointed counsel requested additional time to supplement defendant's pretrial motions. The Court set a schedule for those submissions and rescheduled the evidentiary hearing for June 14, 2022. On May 6, 2022, defendant filed a supplemental memorandum in support of his motion to dismiss. (Dkt. No. 40). The Government filed a supplemental response. (Dkt. No. 41).

The evidentiary hearing was later adjourned due to the Court's unavailability, with the consent of both the Government and defendant. (Dkt. No. 42). Prior to the hearing date, the Court granted another request made by defendant to adjourn the hearing. (Dkt. No. 46). On September 13, 2022, the Court held a status conference to address correspondence received from defendant, including a request to have new counsel assigned. An attorney appointment hearing was held on September 15, 2022, during which Mehmet K. Okay, Esq. was appointed to represent defendant. The Court directed Mr. Okay to file any additional motions by October 17, 2022. No additional motions were filed.

The evidentiary hearing was held on November 14, 2022. The parties submitted supplemental post-hearing briefing on January 23, 2023. (Dkt. Nos. 65; 66). The parties filed responses on February 6, 2023. (Dkt. No. 68; 69). The Court heard oral argument on February 14, 2023. At that time, the Court considered the matter submitted for decision and report and recommendation.

## *FINDINGS OF FACT*

During the hearing on November 14, 2022, the Court heard testimony from a witness for the Government, Federal Bureau of Investigation Special Agent Randall E. Garver, and a witness for the defendant, David Siegel. Their testimony and the exhibits admitted related to events that occurred on the date of defendant's arrest on November 5, 2020. The defendant made incriminating statements to law enforcement in three locations on that date: (1) while he was being transported from his house to the FBI Office in Binghamton, New York; (2) while he was at the FBI Office in Binghamton; and (3) while he was being transported from Binghamton to the Steuben County Jail. Defendant moved

to suppress all of those statements on the grounds that the statements "were obtained in violation of the Fifth Amendment and *Miranda v. Arizona*, 384 U.S. 436 (1966)." (Dkt. 24, ¶ 33).

Agent Garver testified that he is an FBI Special Agent in Buffalo, New York. (Tr. 6-7).[1] He has been partnered with Task Force Officer ("TFO") Michael Hockwater as members of a child exploitation task force in Buffalo. (Tr. 12, 17-18). In late summer or early fall 2020, TFO Hockwater received information from the Wyoming County Sheriff's Office concerning the defendant. (Tr. 17-18). Based upon that information, Agent Garver obtained a search warrant for the defendant's Facebook account. (Tr. 18). After reviewing the returned information from Facebook, Agent Garver concluded that there was a sufficient basis to apply for an arrest warrant for the defendant and for a search warrant for the defendant's residence. (Tr. 18-19).

On or about October 30, 2020, Agent Garver submitted to this Court a Criminal Complaint against the defendant along with a warrant for his arrest. (Tr. 19-20; Exs. 1, 2, 2A). Both were approved and signed by this Court. (*Id.*). Agent Garver also applied for a search warrant for the defendant's residence located at 231 Doolittle Road in Harpursville, New York, in the Northern District of New York. (Tr. 26). The search warrant was signed by Magistrate Judge Therese Wiley Dancks in the U.S. District Court for the Northern District of New York. (Tr. 26-28; Ex. 3).

On November 4, 2020, Agent Garver, TFO Hockwater, and TFO Eric Schmidt drove from Buffalo to Binghamton, New York. (Tr. 30). The next morning, on November 5, 2020, Agent Garver and TFOs Hockwater and Schmidt met up with agents from the

---

[1] Citations to "Tr." refer to the transcript of the evidentiary hearing. (Dkt. No. 59).

4

FBI's Binghamton, New York office and with local law enforcement officers at the Harpursville Fire Hall. (Tr. 30).  From there, they traveled to the defendant's residence to execute the arrest warrant and search warrant. (Tr. 30). Law enforcement arrived at the defendant's residence at around 8:30 a.m. (Tr. 35). TFO Hockwater and other officers went to the front of the residence and knocked on the front door. (Tr. 30, 36). At approximately 8:36 a.m., the defendant came to the door and was taken into custody without incident. (Tr. 30, 36-37; Ex. 4).

After the defendant was taken into custody, Agent Garver and TFO Hockwater informed him of the charges against him were and told him they had a search warrant for his residence. (Tr. 38, 103-04). The agents then asked if the defendant if he would like to talk to them. (Tr. 38).  Defendant responded that he would be willing to talk to them and that he understood his rights. (Tr. 104-05). Agent Garver told the defendant that even though the defendant said he understood they would "still have to go through his rights and make sure that [they] get any waiver of rights done appropriately." (Tr. 104).

Defendant was searched, handcuffed and placed in the back of TFO Hockwater's vehicle to be transported to the FBI Binghamton office by Agent Garver and TFO Hockwater. (Tr. 38, 40). Also present in the vehicle was an investigator from the Wyoming County Sheriff's Office, who was later dropped off at a nearby staging area at the Harpursville Fire Hall. (Tr. 40-41). TFO Schmidt and other officers stayed behind to search defendant's residence. (Tr. 41; Exs. 9, 10).

During the car ride to the Binghamton office, Agent Garver gave the defendant *Miranda* warnings using an FBI "Advice of Rights" form. (Tr. 45-46; Ex. 5). The form indicated the date and time the rights warnings were administered – November 5, 2020

at 8:52 a.m. (Tr. 49; Ex. 5). Agent Garver testified that he read through the rights and made sure the defendant understood each one. (Tr. 50-51). When they stopped briefly at the Harpursville Fire Hall, Agent Garver uncuffed one of the defendant's hands so that he could sign the Advice of Rights form. (Tr. 53). Defendant signed the form under the "Consent" section, indicating that he had read the statement of rights, he understood those rights, and he was willing answer questions without a lawyer present. (Tr. 53-54; Ex. 5). Agent Garver and TFO Hockwater also signed the form. (Id.).

After the defendant signed the Advice of Rights form, they continued driving to the FBI's Binghamton office during which time Agent Garver and TFO Hockwater began interviewing the defendant. (Tr. 56). Defendant acknowledged he had been communicating online with a minor female and that he travelled to Bliss, New York to meet her. (Tr. 56-67). He said, however, that he intended to meet the minor female in order to tell her that she was too young to have sexual contact or communicate with men online. (Tr. 57-58).

At approximately 9:26 a.m., they arrived at the Binghamton office, where the Agent Garver and TFO Hockwater brought the defendant into an interview room. (Tr. 59-60; Ex. 4). An interview that was then conducted, which was recorded and submitted to the Court as evidence at the hearing. (Tr. 60; Ex. 12).[2] During the interview, defendant again acknowledged that he understood his Miranda rights and said that he was willing to answer questions. (Tr. 66; Ex. 12). TFO Hockwater prepared a handwritten statement which summarized what defendant had told them. (Tr. 74; Exs. 7, 12). At the conclusion of the recorded interview, TFO Hockwater read the handwritten statement to defendant.

---

[2] Agent Garver clarified that the time stamp on the video of the interview is about one hour ahead of the actual time. (Tr. 69).

(Tr. 74-75; Ex. 12). Defendant acknowledged that the statement was correct but stated that he did not want to sign it until he could talk to a friend who is a lawyer. (Tr. 76-77; Exs. 7; 12 (10:48:30)). At no other point during the video recorded interview did defendant ask for a lawyer. (Ex. 12). TFO Hockwater added the following sentence to the handwritten statement: "All the above facts are true but I don't want to sign it until I can talk to a lawyer friend." (Tr. 76-77; Exs. 7; 12). Defendant then referred to a "painful memory" he had of an experience involving his ex-girlfriend and police "shoving [his] head in concrete." (*Id.*). TFO Hockwater acknowledged the defendant's unwillingness to sign the statement before speaking with an attorney and the interrogation continued for several minutes before concluding. (*Id.*).

At approximately 10:10 a.m., after the interview was complete, Agent Garver and TFO Hockwater transported the defendant to the Steuben County Jail. (Tr. 77-78; Ex. 4). During the car ride there, neither Agent Garver nor TFO Hockwater asked questions of the defendant. Agent Garver explained that this was because they had already completed their interview of him. (Tr. 79, 109). However, the defendant continued to talk to them and asked if they could charge the minor victim for misleading him. (Tr. 81-82, 109). Agent Garver attested that this statement by the defendant was not made in response to any questioning by him or TFO Hockwater. (Tr. 83, 109).

Around the time Agent Garver and TFO Hockwater were leaving the FBI's office in Binghamton to transport defendant to Steuben County Jail, Agent Garver received a call from TFO Schmidt who was still at defendant's residence. (Tr. 84-85, 115). TFO Schmidt told him that a man named David Siegel had arrived at defendant's residence to help defendant clean and declutter the house. (Tr. 86, 118; Ex. 11). TFO Schmidt stated that

7

Siegel was a friend of defendant and was his real estate attorney. (Tr. 86-87). The defendant never identified Mr. Siegel as his attorney when he was speaking with Agent Garver and TFO Hockwater. (Tr. 86-87).

Agent Garver testified that at no point during their interactions did he or TFO Hockwater threaten the defendant or use physical force on him. (Tr. 89-90). Nor did Agent Garver or TFO Hockwater unholster their weapons or point a weapon at defendant. (*Id.*). They did not tell the defendant that he had to speak with them. (*Id.*). Agent Garver further testified that the defendant did not tell Agent Garver or TFO Hockwater that he wanted the questioning or conversation to stop, nor did the defendant invoke his right to counsel or identify an attorney, other than by stating that he did not want to sign the written statement until he could speak with a lawyer. (*Id.*).

Mr. Siegel's testimony at the evidentiary hearing confirmed that he had pre-arranged plans to travel to the Binghamton area on November 4, 2020 to help defendant organize and clean up his house the following day. (Tr. 125-26, 131). He explained that he is a real estate attorney who has done real estate work for the defendant but is not a criminal attorney. (Tr. 130). He has known defendant for approximately seven years, having met him through a writing group. (Tr. 125, 131). Mr. Siegel testified that he arrived at defendant's residence on the morning of November 5, 2020, after receiving a text message from defendant at 8:15 a.m. that read, "I need you here now." (Tr. 126). When he arrived at defendant's house from his hotel in Binghamton, law enforcement officers were there. (Tr. 138; Ex. 11). When officers asked if Mr. Siegel was the defendant's attorney, he said "yes, but not his criminal attorney." (*Id.*).  Mr. Siegel asked if defendant

was there and if he could speak to him, but officers told him that the defendant was gone. (*Id.*).

It is noted that after having the opportunity to listen to Agent Garver and Mr. Siegel and observe their demeanors during the hearing, the Court finds them to be wholly credible. Defendant did not provide testimony in support of his motion to suppress. He did submit an affidavit making factual allegations about the circumstances of his arrest and interrogation. Defendant asserts that when he was approached by FBI agents at his home, he "immediately told them that I had contacted my lawyer and that my lawyer was on the way" and that he "repeatedly asked for [his] lawyer and told Agents [he] wished to remain silent." (Dkt. No. 24-1, ¶¶ 3, 6). He further attests that he was not advised of his *Miranda* rights at any time on that date. (*Id.*, ¶ 5). The video recorded evidence and the credible, detailed, and live testimony of Agent Garver, which was subject to cross-examination, contradict defendant's claims and establish that defendant only made reference to an attorney when asked to sign a written memorialization of his statements. Thus, the Court declines to credit the self-serving statements in defendant's affidavit that he invoked his Fifth of Sixth Amendment rights prior to questioning or that he was not advised of *Miranda* rights. *See DiMattina v. United States*, 949 F. Supp. 2d 387, 411 (E.D.N.Y. 2013) ("Without the threat of cross-examination, [the defendant's] affidavits are viewed as self-serving and given little weight."); *United States v. Polanco*, 37 F. Supp. 2d 262, 264 n. 4 (S.D.N.Y. 1999) ("[T]he self-serving affidavit of the moving defendant is usually disregarded if he declines to testify at the hearing."); *United States v. Murray*, 6:14-CR-06183, 2015 U.S. Dist. LEXIS 162846, *12 (W.D.N.Y. Dec. 4, 2015) (declining to credit defendant's affidavit indicating that his statements to officers were involuntary

and the product of interrogation because the defendant was not subjected to cross-examination and the hearing testimony did not support his version of events).

## CONCLUSIONS OF LAW

The Court's recommendations as to defendant's motions to suppress and motion to dismiss are detailed as follows.

### Motion to Suppress Statements

Defendant moves to suppress statements he made on November 5, 2020 on the basis that they were obtained in violation of his constitutional rights.[3] (Dkt. No. 24, ¶¶ 33-38). He asserts that he was interrogated by agents immediately upon taking him into custody despite invoking his right to remain silent and asking for the presence of his attorney. The Government argues in opposition that the defendant was properly advised of his *Miranda* rights, chose to waive those rights, and made incriminating statements voluntarily.

A suspect in custody must be advised prior to any questioning "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). "Even absent the accused's invocation of [his *Miranda* rights], the accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused 'in fact knowingly and voluntarily waived [*Miranda*] rights' when making the statement." *Berghuis v. Thompkins*, 560 U.S. 370, 382

---

[3] Defendant also moves to suppress his statements on the basis that are fruit of the poisonous tree stemming from illegally obtained evidence. (Dkt. No. 24, ¶¶ 34). This argument is based on defendant's challenges to three federal search warrants, which are addressed below.

(2010) (second alteration in original) (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)).

"To prove a valid waiver, the government must show (1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right." *United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995). The government must prove waiver by a preponderance of the evidence. *See United States v. Gaines*, 295 F.3d 293, 297 (2d Cir. 2002). A waiver is made knowingly and intelligently if the defendant has a "full awareness of both the nature of the right being abandoned and the consequence of the decision to abandon it." *See Moran v. Burbine*, 475 U.S. 412, 421 (1986). To satisfy the Fifth Amendment, a suspect does not need to know and understand every possible consequence of a waiver. *Id.*, at 422. The government must prove the validity of a waiver by showing that the accused knew he could choose not to talk to law enforcement, to talk only with counsel present, or discontinue talking at any time. *See Colorado v. Spring*, 479 U.S. 564, 574 (1987).

The Government must also demonstrate that defendant's *Miranda* waiver was made voluntarily. For waiver to be voluntary, it must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran*, 475 U.S. at 421. Voluntariness is based upon the totality of the circumstances and includes an inquiry as to: "(1) the characteristics of the accused; (2) the conditions of the interrogation; and (3) the conduct of law enforcement officials." *Green v. Scully*, 850 F.2d 894, 900 (2d Cir. 1988). More specifically, the factors "include the accused's age, his lack of education or low intelligence, the failure to give *Miranda* warnings, the length of detention, the nature

11

of the interrogation, and any use of physical punishment. *Campaneria v. Reid*, 891 F.2d 1014, 1020 (2d Cir. 1989). Overall, the voluntariness inquiry considers "whether a defendant's will was overborne" by the circumstances surrounding the giving of a confession. *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 223 (1973)).

Following the evidentiary hearing, defendant changed positions and does not dispute that he received a *Miranda* warning prior to being questioned nor that he voluntarily signed an Advice of Rights and Consent form acknowledging that he had read the statement of rights, he understood those rights, and he was willing answer questions without a lawyer present. Defendant instead argues that his statements should be suppressed because he invoked his right to counsel twice on the date of his arrest: first, when he texted David Siegel at 8:15 a.m., and second, during the custodial interview when he refused to sign the written statement prepared by TFO Hockwater without counsel present. Neither of defendant's arguments is persuasive.

First, defendant's text message to a friend asking that the friend come to his house was not known to law enforcement. None of the facts established at the hearing indicate that defendant told law enforcement that he had contacted an attorney or that he wanted to wait for an attorney to arrive. Nonetheless, even if the text message had been known to law enforcement, which it was not, it contained only the statement: "I need you here now." This message is vague and cryptic and would not constitute an unambiguous request for counsel or other invocation of rights. *See Davis v. United States*, 512 U.S. 452, 549 (1992) (a suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the

statement to be a request for an attorney"); *United States v. Oehne*, 698 F.3d 119, 123 (2d Cir. 2012) (explaining that when a suspect makes a statement concerning the right to counsel that is ambiguous or equivocal or makes no statement, the police are not required to end the interrogation, or ask questions to clarify whether the accused wants to invoke his *Miranda* rights). Further, although Mr. Seigel eventually asked officers if he could speak with defendant, he did not say that he was representing defendant for the purposes of a criminal investigation, nor that defendant had requested his legal advice. Even if Mr. Seigel had attempted to assert defendant's right to counsel on defendant's behalf, which according to his own testimony he did not, he would not have been unable to do so because the "right to counsel is a personal to the individual questioned; it is a right 'that must be affirmatively invoked by the suspect.'" *See United States v. Medunjanin*, 752 F.3d 576, 587 (2d Cir. 2014) (quoting *Davis*, 512 U.S. at 461) (holding that an attorney's request to law enforcement that they stop questioning a defendant did not constitute an invocation of defendant's right to counsel because that right must be invoked by the suspect himself).[4]

Second, defendant's request to speak to a lawyer before he signed a handwritten summary of the oral statements he made during interrogation was, at most, a limited invocation of the right to counsel solely with respect to the signing of that statement. Prior to that time, defendant had been properly advised of his *Miranda* rights and he waived

---

[4] The Court rejects defendant's claim that his text message constituted a pre-*Miranda* invocation of counsel which could not be subsequently waived without the presence of counsel. This is factually inaccurate and defendant's reliance on *People v. Dawson*, 38 N.Y. 3d 1055 (2022), is misplaced. The New York Court of Appeals decision in *Dawson* is irrelevant here because it applies a different standard than is applicable under federal law. *See id.*, at 1059 (citing *People v. Cunningham*, 49 N.Y.2d 203 , 207 (1980)) (explaining that the right to counsel in New York is more robust under the State Constitution than the rights guaranteed by the Sixth Amendment to the United States Constitution). Further, the language cited by defendant is drawn from the dissenting opinion in *Dawson* without explanation of its import.

those rights both expressly, by signing the Advice of Rights waiver form, and implicitly, by freely talking to Agent Garver and TFO Hockwater, as reflected in the recorded interview. Defendant made only one reference to an attorney and never told agents that he did not want to speak with them. His limited request to have a lawyer review the written statement before he signed it does not constitute an assertion of his right to counsel with respect to oral statements. *See United States v. Martin*, 664 F.3d 684, 689-90 (7th Cir. 2011) (holding that defendant's comment that he would rather talk to an attorney before providing a written statement was limited in scope and did not preclude police from eliciting oral statements). Further, when defendant sought to have counsel present before signing a statement, that limited invocation of rights was honored by Agent Garver and TFO Hockwater, who expressly noted on the document that defendant said all the facts were true but that he did not want to sign it until he could talk to a "lawyer friend."

Defendant relies on *United States v. Quiroz*, 13 F.3d 505 (2d Cir. 1993) to argue that he invoked his right to counsel generally by refusing to sign a written statement until he could talk to a lawyer. However, in *Quiroz*, the defendant refused to sign an advice of rights form without counsel. By contrast, here the defendant had already signed an advice of rights form and had affirmatively waived his *Miranda* rights. Moreover, the holding in *Quiroz* has been called into question by the Supreme Court's opinion in *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010), in which the Supreme Court ruled that a defendant had implicitly waived his *Miranda* rights by answering detectives' questions despite his refusal to sign a waiver form and to his refusal to make a written statement. *Accord United States v. Plugh*, 648 F.3d 118, 126 (2d Cir. 2011) ("To the extent *Quiroz* can be read as

14

articulating such a rule [i.e., a refusal to sign a waiver of rights form constitutes an invocation of rights], that rule does not survive *Berghuis*.").

Defendant also relies on *Connecticut v. Barrett*, 479 U.S. 523 (1987). However, that case squarely supports the Government's position. In *Barrett*, the defendant was advised of his *Miranda* rights and signed a waiver form. *Id.*, at 525-26. After Barrett orally confessed to the crime, one of the officers wrote a summary of that oral statement. Barrett refused to sign the statement, telling officers that he had "no problem" talking about the incident but he would not give a written statement unless his attorney was present. *Id.* The written statement was later allowed into evidence at trial following a suppression hearing based upon the lower court's finding that defendant had waived his right to counsel. *Id.*, at 526. On appeal, the Supreme Court held that the summary of defendant's oral statements was properly admitted, reasoning that the defendant's request for counsel was limited to a written statement and that he otherwise "made clear to police his willingness to talk about the crime for which he was a suspect." *Id.*, at 527-29.

Here, defendant voluntarily waived his rights and expressed willingness to talk to Agent Garver and TFO Hockwater. His request to talk to a lawyer before signing the document memorializing his oral statements, was not an across-the-board assertion of his right to counsel. Consistent with *Barrett* and *Martin*, defendant's request was a limited invocation of rights pertaining only to the signing of the handwritten statement. *See Barrett*, 479 U.S. at 529; *Martin*, 664 F.3d at 689-90. Moreover, even if defendant's refusal to sign the statement without a lawyer was viewed as a general invocation of his right to counsel, it would not operate retroactively to protect the incriminating statements he made up to that point. *See Ross v. Racette*, 15-CV-6472, 2018 U.S. Dist. LEXIS 59562, at *27

(W.D.N.Y. Apr. 8, 2018) (holding that habeas petitioner's invocation of the right to counsel prior to signing a written statement did not operate retrospectively to vitiate his knowing, intelligent, voluntary decision to speak with the police).[5]

Defendant also argues that his statements should be suppressed on the basis that his agreement to speak with law enforcement was a "mere acquiescence to an overwhelming display of governmental authority in light of painful memories of a prior encounter with law enforcement in the Eastern District of New York that turned physical." (Dkt. No. 66, pg. 7). Defendant offers no further support for this contention, and there is no evidence in the record that law enforcement coerced, threatened, or used force against defendant to obtain a statement from defendant. In fact, the testimonial and recorded evidence clearly shows that defendant's waiver of rights was voluntary. Agents Garver and TFO Hockwater each displayed a calm and professional demeanor. The interview had a conversational tone, during which defendant spoke freely, laughed, and made jokes at times. Defendant was given water, offered use of a bathroom, and his handcuffs were loosened at his request.

---

[5] The Court also notes that the evidence adduced at the hearing supports a finding that the statements made by defendant while he was being transported from the Binghamton FBI Office to the Steuben County Jail, were spontaneous in nature and not made in response to interrogation. Agent Garver credibly testified that neither he nor TFO Hockwater asked questions of defendant during this drive because they had already completed their interview of him. The defendant's statements about whether the minor victim could be charged for misleading him were not elicited by law enforcement, and therefore did not constitute interrogation. See Rhode Island v. Innis, 446 U.S. 291, 301 (1980) (holding that "interrogation" includes express questioning of the suspect and its "functional equivalent," meaning "any words or actions on the part of police other than those normally attendant to arrest and custody that the police should know are reasonably likely to elicit an incriminating response). Thus, even if defendant had invoked his right to counsel or right to remain silent prior to this point, there is no basis to suppress the unsolicited statements. See United States v. Smith, 814 Fed. Appx. 634, 638 (2d Cir. 2020) (summary order) (holding that agents did not engage in questioning when they merely responded to defendant's questions and therefore defendant's subsequent admission was admissible even though defendant had invoked his right to counsel); United States v. Guido, 704 F.2d 675, 677-78 (2d Cir. 1983) (holding that defendant's statements made after invoking his right to counsel were properly admitted because officers' responses to defendant's questions did not constitute interrogation).

In sum, the Government has met its burden to prove that defendant's statements were lawfully obtained after defendant was properly advised of his *Miranda* rights and he knowingly and voluntarily waived those rights. Defendant's invocation of rights was limited to a request for counsel only with respect to signing a handwritten summary of his oral statements. Accordingly, it is recommended that defendant's motion to suppress statements be denied.

<u>Motion to Suppress Physical Evidence</u>

Defendant moves to suppress physical and digital evidence seized pursuant to three federal search warrants on that grounds that the search warrant applications contained several inconsistent, non-contextual, and misleading allegations. (Dkt. No. 24, ¶¶ 26-32). The Government counters that the evidence was lawfully seized pursuant to search warrants supported by ample probable cause, which did not contain any material misstatements or omissions. (Dkt. No. 26, pgs. 8-14).

The following warrants were obtained in this investigation: (1) warrant authorizing search and seizure of data associated with a Facebook account and records associated with a Verizon Wireless telephone number, issued by this Court on October 26, 2020 (20-mj-5264-01; 20-mj-5264-02); (2) warrant authorizing the search of defendant's vehicle, person, and residence at 231 Doolittle Road, Harpursville, New York, issued by Judge Dancks in the Northern District of New York on November 2, 2020; and (3) warrant authorizing seizure of records and information associated with a T-Mobile telephone number, issued by this Court on February 10, 2021 (21-mj-5022). The property seized

from defendant's home and person consisted of five cellular telephones, one HP laptop, and one external hard drive.[6]

Defendant controverts the probable cause supporting the warrant applications in several regards. He argues that the October 26, 2020 warrant  application (seeking permission for a Facebook data search and Verizon Wireless records) contains numerous material misrepresentations, including that there was no allegation that defendant used Facebook, as opposed to Facebook Messenger, to communicate; that there are no allegations supporting the claim that defendant engaged in conduct prohibited by 18 U.S.C. § 2423(a) which deals with transportation of a minor for a criminal offense; and that the affidavit wrongly alleges that every Internet Protocol ("IP") address provided by an Internet Service Provider ("ISP") is unique to each user, when it is not. Regarding the November 2, 2020 warrant application (seeking permission to search defendant's home and vehicle), defendant argues that the affidavit contains reckless misrepresentations, including that the details of defendant's conversation with an unknown witness of an unlisted age were distasteful but not illegal and were intended to prejudice the Court; that there is no indication defendant was aware of the age of the witness or Victim at the time of an alleged online group chat; that certain alleged statements by Victim to defendant are unsubstantiated; that the context of certain communications is unknown; and that discovery materials show that the Victim had no intention of meeting with anyone and was not enticed or coerced.

---

[6] Defendant has provided an affidavit of standing attesting to the fact that he lived at 231 Doolittle Road, Harpursville, New York, and that he had a reasonable expectation of privacy in the items seized from that residence. (Dkt. No. 24-1).

Upon a challenge to a probable cause finding made in a search warrant, a reviewing court must give deference to the issuing judge. *Illinois v. Gates*, 462 U.S. 213, 236 (1969). The court is not to conduct a *de novo* review nor is it to "interpret[] affidavit[s] in a hypertechnical, rather than a commonsense, manner." *Id.* Instead, the role of a reviewing court "is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 238 (internal citations omitted). The probable cause analysis is based on the totality-of-the-circumstances, with the task of the issuing magistrate to "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him […] there is a fair probability that contraband or evidence of a crime will be found in a particular place." *See Illinois v. Gates*, 462 U.S. 213, 238 (1983). Where, as here, the Court is reviewing the probable cause determination of an independent magistrate, it asks solely "whether the issuing judicial officer had a substantial basis for the finding of probable cause." *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993). Doubts regarding the existence of probable cause should be resolved in favor of upholding the search warrant. *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983). To that end, warrant affidavits are entitled to "a presumption of validity." *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

The Supreme Court has held that a defendant is entitled to an evidentiary hearing with respect to the validity of a search warrant only if they can make a substantial preliminary showing that: (1) the warrant affidavit contained a false statement; (2) the false statement was included intentionally or recklessly; and (3) the false statement was integral to the probable cause finding. *Franks*, 438 U.S. at 155-56. In other words, to justify a *Franks* hearing "a defendant is required to show: (1) 'that there were intentional

and material misrepresentations or omissions' in the warrant affidavit, and (2) that the 'alleged falsehoods or omissions were necessary to the … probable cause finding.'" *United States v. Mandell*, 752 F.3d 544, 552 (2d Cir. 2014) (quoting *United States v. Awadallah*, 349 F.3d 42, 65 (2d Cir. 2003)). Further, the Second Circuit has held that "[i]f, after setting aside the allegedly misleading statements or omissions, the affidavit, nonetheless, presents sufficient information to support a finding of probable cause, the district court need not conduct a *Franks* hearing." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998).

Applying this standard of review, the Court has reviewed the search warrants and warrant applications and finds that probable cause existed for issuance of each warrant. The affidavits, which were each provided by FBI Special Agent Randall E. Garver, contain ample information to support the magistrates' findings. The application for the Facebook and Verizon warrants summarized the minor Victim's communications with defendant over Facebook, as well as Facebook Messenger, and via text message. It also stated that the Victim provided a Facebook Messenger address and telephone number associated with defendant. It further described allegations of a witness and the Victim about defendant's communications with the Victim, including that defendant asked for naked photographs of Victim and discussed getting the Victim pregnant, and that he travelled to a park in Bliss, New York for the purpose of engaging in sexual contact with the Victim. The applications for the T-Mobile and Harpursville residence warrants each contained additional information gained as a result of the first warrant. This included quotations of Facebook messages and text messages showing that defendant repeatedly discussed engaging in sexual activity with the Victim and discussed plans to meet the Victim to have

sex with her. The affidavits also stated that, on October 12, 2020, the defendant sent the Victim screen shots showing how far away he was from Bliss, New York, as he travelled from Harpursville to meet the Victim. These messages, and others, were sent after defendant learned that the Victim was 13 years old.

Defendant has not shown that any misstatements or omissions contained in the warrant affidavits were material to the probable cause determination. Defendant's claim that the warrant application misleadingly sought information from Facebook when the alleged communications occurred on Facebook Messenger is meritless, as Facebook owns the Messenger application and the relevant messages were obtained from Facebook pursuant to the search warrant. Further, the descriptions of the IP addresses were consistent between the affidavits and did not mislead the Court. The only variation between the affidavits was that the October 26, 2020 affidavit explained general information about IP addresses and the November 2, 2020 affidavit stated that data obtained from an Internet Service Provider showed that a unique IP address was shared by multiple users, including the defendant. These are not material inconsistencies and they do not mislead the reviewing magistrate.   Defendant's further claims of misrepresentations are baseless. The only facts or allegations that defendant points to relate to inconsequential details within the affidavits (e.g., the exact name of the park where they agreed to meet) or are speculative interpretations of evidence (e.g., defendant's assertion that it was clear the Victim did not intend to engage in illegal conduct with him).

Contrary to defendant's arguments, the warrant applications did not contain any material misstatements or omissions to justify a *Franks* hearing.  Defendant has not made

a substantial preliminary showing of an intentional or reckless misstatement or omission, let alone one that was necessary to the judge's finding of probable cause. *See Salameh*, 152 F.3d at 113. Indeed, defendant has not provided any evidence to show that Agent Garver intentionally or recklessly misled the issuing judges.

Defendant's motion to suppress should also be denied based on the "good faith exception" established in *United States v. Leon*, 468 U.S. 897 (1984). Under *Leon*, evidence seized pursuant to a challenged warrant is not subject to suppression so long as law enforcement acted with objective and reasonable good faith, even if the judicial officer erred in finding probable cause. *Id.* at 922. Here, there is no evidence that Agent Garver or any officer intended to mislead the magistrate, and the Court finds that the law enforcement officers who executed the search warrants had a good faith basis to believe that the warrants were lawfully issued based upon a finding of probable cause. The warrant applications certainly were "not 'so lacking in indicia of probable cause' that it was unreasonable for the officers to rely upon" them. *United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992) (quoting *Leon*, 468 U.S. at 923). Thus, defendant's motion to suppress may also be denied on this alternative ground.

For these reasons, the Court recommends that defendant's motion to suppress evidence gained from the searches of his Facebook account, Verizon Wireless records, vehicle and residence, and T-Mobile records be denied.

<u>Motion to Dismiss</u>

Defendant moves to dismiss the Indictment as insufficient on the grounds that it fails to inform him as to what conduct constitutes enticement; fails to advise him of the identity of "Victim 1;" and fails to specify the factual allegations constituting the proscribed

acts. (Dkt. Nos. 24, ¶¶ 6-11; 40). He argues that the Indictment lacks specificity, which is not resolved by the discovery materials. He further argues that the Indictment is duplicitous because it does not set forth what alleged acts or conduct are encompassed under the charge. In the alternative to dismissal, the defendant seeks a bill of particulars specifying the exact dates, times, and places of the alleged offense and the means by which the offense was committed.

The Federal Rules of Criminal Procedure require that an indictment should be "a plain, concise, and definite written statement of the essential facts constituting the offense charged [...]." Fed. R. Crim. P. 7(c)(1).  A criminal defendant is entitled to an indictment that states the essential elements of the charge against him. *United States v. Pirro*, 212 F.3d 86, 91 (2d. Cir. 2000). An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974). The Second Circuit has repeatedly confirmed that "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) (quoting *United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir. 1975)). An indictment must also "be read to include facts which are necessarily implied by the specific allegations made." *Id.* (quoting *United States v. Silverman*, 430 F.2d 106, 111 (2d Cir. 1970)).

Here, defendant is charged with the single offense of enticement of a minor, in violation of 18 U.S.C. § 2422(b). The essential elements of this crime are "that an

individual (i) used a facility of interstate commerce; (ii) to knowingly persuade, induce, or entice, or attempt to persuade, induce, or entice; (iii) any individual who is younger than eighteen-years old; (iv) to engage in sexual activity of a criminal nature." *United States v. Douglas*, 626 F.3d 161, 164 (2d Cir. 2010). The Indictment alleges that "[f]rom on or about October 4, 2020, until on or about October 12, 2020, [...] the defendant, using facilities and means of interstate and foreign commerce, that is, a cellular telephone and the internet, did knowingly, persuade, induce, entice, and coerce [...] Victim 1, a person known to the Grand Jury, an individual who had not attained the age of 18 years, to engage in sexual activity for which any person can be charged with a criminal offense." (Dkt. No. 11). Thus, the Indictment tracks the statutory language of § 2422(b), sets forth the approximate time of the alleged conduct, and includes all the essential elements.

The Court agrees with the Government's position that this Indictment is sufficient because it puts the defendant on notice of the "core of criminality" of the charges, defined as the essence of the crime, in general terms, and that the particulars of how a defendant effected that crime fall outside that purview. *See United States v. D'Amelio*, 683 F.3d 412, 418 (2d Cir. 2012). In *D'Amelio*, the Second Circuit held that the "core of criminality" for an offense under § 2422(b) involved a "course of conduct" with an ultimate purpose to entice a minor "into a position where she could become the victim of a sexual predator." *Id.*, at 421-22. There, all the communications relied on by the Government, whether by email or telephone calls, took place as part of that single course of conduct. *Id.* In this case, the Indictment adequately states the "core of criminality" in defendant's course of conduct using telephone and Internet communications from October 4, 2020, through

October 12, 2020, and the particular details of how defendant effected the crime fall outside that "core of criminality" and are not required to be included in the Indictment.

Defendant further contends that the Indictment is deficient on its face and must be dismissed as a matter of law because it fails to specify and include the "particular sexual activity of a criminal nature" for which a person could be charged with a criminal offense. (Dkt. No. 40). Defendant argues that because this term is statutory term is generic and undefined, and could encompass numerous offenses, the Indictment fails to inform him of the acts he must defend against. (*Id.*). He further suggests that the grand jury was not presented with evidence of the specific crime or crimes with which he could have been charged. (*Id.*). Defendant supports his argument with several district court decisions which have found 18 U.S.C. § 2422 and § 2423 indictments deficient for failing to allege the particular unlawful sexual activity underlying the charges. *See United States v. Thompson*, 141 F. Supp. 3d 188, 196-97 (E.D.N.Y. 2015); *United States v. Peel*, 2:14-CR-106, 2014 U.S. Dist. LEXIS 91992 (E.D. Cal. July 7, 2014); *United States v. Lanzon*, 613 F. Supp. 2d 1348 (S.D. Fla. 2009).

An analogous argument was presented to and rejected by the Eleventh Circuit in *United States v. Jockisch*, 857 F.3d 1122 (11th Cir. 2017).[7] There, the defendant was charged with violating § 2422(b) by attempting to persuade a minor to engage in sexual activity that, had it been consummated, could have resulted in criminal charges under three different Alabama criminal statutes. *Id.*, at 1125. The court rejected defendant's claim that the trial court erred by not instructing the jury that it must be unanimous in

---

[7] The Court notes that each of the cases defendant cites in support of this argument were decided prior to the Eleventh Circuit's decision in *Jockisch*.

determining which of the three state statutes would have been violated. *Id.*, at 1127. In affirming the conviction, the court concluded that the specific statute criminalizing the sexual activity was not an element of the § 2422(b), but merely a means of satisfying an element. *Id.*, at 1131. The court explained: "[Section] 2422(b)'s underlying proscribed criminal conduct is the 'persuasion, inducement, enticement, or coercion of the minor rather than the sex act itself.'" *Id.*, at 1129. Indeed, "the particular sex act that Defendant might have ultimately attempted to induce is only the means of satisfying the element in this case: an attempt to persuade a minor to engage in an unlawful sex act." *Id.*, at 1131. "As long as the jury could unanimously conclude that Defendant was attempting to persuade [the victim] to perform some unlawful sex act—whichever one of the three it might have turned out to be—the jury could properly find Defendant guilty of violating § 2422(b)." *Id. See also United States v. Berk*, 652 F.3d 132, 137-38 (1st Cir. 2011) (rejecting challenge to § 2422(b) indictment that did not specify underlying state crime and noting that it had never held that identifying a specific criminal offense is a requirement in a § 2422 indictment); *United States v. Hart*, 635 F.3d 850, 855-56 (6th Cir. 2011) ("Because 18 U.S.C. § 2422(b) criminalizes persuasion and the attempt to persuade, the government is not required to prove that the defendant completed or attempted to complete any specific chargeable offense."); *but see United States v. Mannava,* 565 F.3d 412, 415 (7th Cir. 2009) ("The liability created by 18 U.S.C. § 2422(b) depends on the defendant's having violated another statute, and the elements of the offense under that other statute therefore must be elements of the federal offense in order to preserve the requirement of jury unanimity.").

Similarly, in *D'Amelio*, the Second Circuit addressed a claim that the indictment was constructively amended when the government introduced evidence of telephone and Internet communications at trial, while the indictment referenced only Internet communications. *See* 683 F.3d at 418. The court found that the specific means of interstate commerce were not an "essential element" of the charge. *Id.*, at 422-23. Therefore, the failure to specify telephone communications in the indictment and the subsequent modification of proof at trial was inconsequential. *Id.*

In *United States v. Vickers*, a defendant was charged by indictment with transportation of a minor victim in interstate commerce to engage in sexual activity for which any person could be charged with a criminal offense in violation of 18 U.S.C. §§ 2423(a) and 2423(e). *See* 13-CR-128, Dkt. No. 137, at 6-12 (W.D.N.Y. Nov. 19, 2015) (Arcara, J.), *aff'd* 708 F. App'x 732 (2d Cir. 2017) (summary order). There, the District Court rejected a claim that specification of the sexual offense the defendant was alleged to have violated was an essential element of the crime. *Id.* The court instead found that the indictment, which tracked the language of the statute, sufficiently informed the defendant of the charges against him and allowed him to plead double jeopardy in a future prosecution based upon the same conduct. *Id.*, at 9-10. ("Because the Indictment is sufficient on its face and appropriately tracks the language of Section 2423(a) the Court rejects defendant's arguments that the specific state statutes or foreign laws which defendant violated or intended to violation are essential elements of the crime which should have been included in the Indictment.). On appeal, the Second Circuit upheld the conviction stating that even if the omission was in error, the error was harmless because,

in part, Vickers received a bill of particulars prior to trial specifying the underlying laws violated. *See* 708 F. App'x at 735-36.

Here, the Court finds the reasoning of *Jockisch*, *D'Amelio, and Vickers* persuasive. Because the specific statute or statutes that the defendant's conduct would have violated does not constitute an essential element of the offense, the indictment is not insufficient for failing to identify an underlying criminal offense. *See United States v. Doak*, CR-18-00242-KD, 2019 U.S. Dist. LEXIS 83595, at *4-7 (S.D. Ala. May 17, 2019) (denying motion to dismiss indictment charging violations of 18 U.S.C. § 2423(a) because, even though the Government failed to allege any underlying statute or criminal offense in the indictment, the specific statute does not constitute an essential element of the offense); *see also Kozak v. United States*, 2:11-CR-121, 2018 U.S. Dist. LEXIS 17350 (M.D. Fla. Feb. 2, 2018) (finding § 2422(b) indictment sufficient because "[w]hile pleading [the underlying state] statutes in the indictment may be better practice, [...] there is no such constitutional requirement"); *United States v. Lasalle*, CCM 38323, 2014 CCA LEXIS 70 (A.F. Ct. Crim. App. Feb. 10, 2014) (concurring with majority of federal circuit courts that underlying state crime need not be alleged in § 2422(b) charging instrument).

Moreover, any underlying concerns of proper notice and possible prejudice to the defendant have been alleviated by the Government's voluntary notification that it intends to prove at trial that the sexual activity the defendant sought to engage in with the victim would have constituted sexual intercourse with a minor in violation of New York State Penal Law § 130.30(1) (Rape in the Second Degree); § 130.25(2) (Rape in the Third Degree); and § 130.60(2) (Sexual Abuse in the Second Degree). (Dkt. No. 41, pg. 8). "When an indictment delineates the elements of a charged offense, however concisely,

the underlying concerns of proper pleading – notice of the charge to be met and protection against double jeopardy – may be further promoted by a bill of particulars or pretrial discovery. *Stavroulakis*, 952 F.2d at 693 (citing *United States v. McClean*, 528 F.2d 1250, 1257 (2d Cir. 1976)).

For these reasons, this Court recommends that defendant's motion to dismiss the Indictment be denied.

## OMNIBUS DISCOVERY DEMANDS

### *Bruton Request*

Defendant makes a request for disclosure of information regarding non-testifying co-conspirators, and, pursuant *Bruton v. United States*, 391 U.S. 123 (1968), for an order barring the admission into evidence of all post-arrest statements by non-testifying co-conspirators which may implicate him in any way. (Dkt. No. 24, ¶¶ 12-16). The Government represents that it is not aware of any such co-conspirators. (Dkt. No. 26, pg. 4). Therefore, this request is denied as moot.

Furthermore, as a general rule, this type of motion is best considered by the trial judge. *United States v. Anguiera*, 11-CR-116, 2012 U.S. Dist. LEXIS 51862 (W.D.N.Y. April 12, 2012) ("[T]he relief sought for excluding non-testifying co-conspirator statements...[i]s better considered by the District Judge prior to trial and deferred for that consideration"). For this reason, to the extent defendant's request is not moot, the request is denied without prejudice to renew this motion before the District Court.

### *Bill of Particulars*

Defendant moves for a bill of particulars relevant to the charges contained in the Indictment. (Dkt. No. 24, ¶¶ 17-25). He seeks particularization as to the dates, times, and

places of the alleged offense, the means by which the alleged offense occurred, and the identity of the victim. (*Id.*).

Federal Rule of Criminal Procedure 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). However, "[t]he Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendants committed the crimes charged, or a preview of the Government's evidence or legal theories." *United States v. Rittweger*, 259 F. Supp. 2d 275, 291 (S.D.N.Y. 2003). In determining whether a bill of particulars is warranted, a court is to consider "the complexity of the offense, the clarity of the indictment, and the degree of discovery otherwise afforded to defendants." *United States v. Shoher*, 555 F. Supp. 346, 349 (S.D.N.Y. 1983). Further, it is well-settled that acquisition of evidentiary detail is not the purpose of a bill of particulars. *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990).

Here, the Court finds that a bill of particulars is unnecessary because the specific allegations contained in the Indictment, together with the discovery already provided, are sufficiently clear. The enticement charge is neither complex nor difficult to understand. It charges the defendant with enticement of a minor, specifying the minor victim, the timeframe (October 4, 2020, to October 12, 2020), and the means of interstate commerce used (cellular telephone and Internet). It relates only to a single victim and a discrete set of actions. Courts have rejected requests for particularization under similar

circumstances. *See United States v. McDarrah*, 05-CR-1182, 2006 U.S. Dist. LEXIS 48269, *24-25 (S.D.N.Y. July 17, 2006) (denying defendant's request for a bill of particulars on an 18 U.S.C. 2422(b) charge seeking "specification of the sexual activity" he attempted to entice a minor to engage in and the identity of the minor(s) involved); *United States v. Kufrovich*, 997 F. Supp. 246 (D. Conn. 1997) (*overruled on other grounds by United States v. Griffith*, 284 F.3d 338, 350-51 (2d Cir. 2002)) (denying motion for bill of particulars seeking detail as to what means of interstate commerce were used and the nature of the alleged sexual act in prosecution for violation of § 2422(b)).

Further, the Government submits that it has already provided considerable information to the defendant in addition to the charges of the Indictment; including the Criminal Complaint, which sets forth precise dates and times of the conduct forming the basis of the offense, and Rule 16 discovery that includes search warrants, warrant applications, and Facebook messages between the defendant and the victim. (Dkt. No. 26, pgs. 4-8). Additionally, as noted above, the Government has supplemented its response to this request to notify defendant that it intends to prove at trial that the sexual activity the defendant sought to engage in with the victim would have constituted sexual intercourse with a minor in violation of New York State Penal Law § 130.30(1) (Rape in the Second Degree); § 130.25(2) (Rape in the Third Degree); and § 130.60(2) (Sexual Abuse in the Second Degree). (Dkt. No. 41, pg. 8). The Government also objects that defendant has not offered any specific facts or reasons to justify a finding that further particularization is necessary. (Dkt. No. 26, pgs. 4-8).

Defendant is not permitted to use a bill of particulars to learn evidentiary detail or the Government's legal theory. The Indictment plainly allows defendant to identify the

charges against him, avoid surprise at trial, and interpose a plea of double jeopardy if necessary. For these reasons, defendant's request for a bill of particulars is denied.

<u>Motion to Compel Disclosure of Brady/Giglio Material</u>

Defendant moves for the disclosure of any favorable, exculpatory or impeachment materials pursuant to *Brady, Giglio* and their progeny.[8] (Dkt. No. 24, ¶¶ 39-45). "[A]s a general rule, *Brady* and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant." *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001). "[A]s long as a defendant possesses *Brady* evidence in time for its effective use, the Government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." *Id.* at 144.

The Government submits that it is mindful of its obligations under *Brady* and its progeny. (Dkt. No. 26, pgs. 15-17). The Government states that it will disclose any exculpatory information, if and when it becomes aware of it. The Government agrees to provide impeachment material, namely, promises of leniency or immunity agreements with witnesses, criminal records of witnesses, immoral or criminal acts committed by witnesses, and prior inconsistent statements, prior to the commencement of trial and when the Government produces *Jencks Act* material.

Given the Government's representations and agreement to produce the above-described evidence, defendant's motion to compel the production of *Brady/Giglio* material is denied as moot. Consistent with *Coppa*, the Government is reminded of its continuing obligation to timely disclose any *Brady* and *Giglio* material to defendant. *See United States v. Padovani*, 14-CR-224, 2016 WL 5402696, at *4 (W.D.N.Y. Sept. 28, 2016).

---

[8] *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972).

*Rule 16 Discovery and Rule 12 Notice*

Defendant moves for discovery and inspection pursuant to Rule 16 of the Federal Rules of Criminal Procedure. (Dkt. No. 24, ¶¶ 46-47). Rule 16(a) requires the Government to disclose certain evidence and information upon request of a defendant.  While Rule 16 was intended to provide for liberal discovery, a defendant is not entitled to discovery of "the entirety of the Government's case against him." *United States v. Percevault*, 490 F.2d 126, 130 (2d Cir. 1974). Rule 16 provides that a defendant is entitled to the following: (1) a defendant's written, recorded or oral statements in the possession of the Government; (2) the defendant's prior record; (3) documents, objects, books, papers, photographs, etc. that will be used during the Government's case-in-chief; (4) reports of examinations or tests; (5) and information about expert witnesses in accordance with Fed. R. Evid. 702, 703 and 705. *See* Fed R. Crim. P. 16(a)(1). Rule 16 specifically exempts from disclosure "reports, memorandum, or other internal Government documents made by an attorney for the Government or other Government agent in connection with investigating or prosecuting the case." *See* Fed. R. Crim. P. 16(a)(2).

Defendant acknowledges that he has already received voluntary discovery from the Government but makes additional requests for any Rule 16 discovery not already turned over, including all video or audio recording made in this case, all photographs taken, all police reports, all search warrants and warrant applications, and all written or recorded statements. In response, the Government states that it has fully complied with its obligations under Rule 16.[9] (Dkt. No. 26, pgs. 17-19). The Government affirms that it

---

[9] Defense counsel affirms that they have received copies of the search warrant applications, but states that the Government has failed to provide the entirety of data collected as a result of the warrants, as well as the data upon which the applicant relied in the applications. (Dkt. No. 24, ¶ 30). Defendant specifies that that this data includes an IP log provided by Facebook, the content of conversations alleged to have

has already provided defendant with substantial voluntary discovery and that it will continue to provide any additional discoverable materials that become available. The Government objects to defendant's discovery demands to the extent that they are moot, premature, or request material beyond the scope of the Government's discovery duties.

Based upon the representations made by the Government, and consistent with the Court's directives described above, defendant's request for discovery pursuant to Rule 16 is denied as moot. The Government is reminded that its disclosure obligations continue up through and during trial. *See* Fed. R. Crim. P. 16(c).

Defendant also moves for notice of intention to use evidence against defendant at trial pursuant to Rule 12 of the Federal Rules of Criminal Procedure. The Government has provided notice that it intends to use all items defendant has been provided with or made aware of in accordance with Rule 12(b)(4)(A). (Dkt. No. 26, pg. 19). Therefore, this branch of defendant's discovery motion is also denied as moot.

### Disclosure of Identity of Informants

Defendant moves for disclosure of the identities of all informants used by the Government in the course of its investigation.  (Dkt. No. 24, ¶¶ 48-52). Defendant also seeks potential impeachment material as to these individuals. (*Id.*) The Government represents that it did not utilize any informants during the investigation of defendant. (Dkt. No. 26, pg. 19). Therefore, this request is denied as moot.

---

occurred between Victim and defendant, and information from "HughesNet" related to IP addresses for accounts registered to defendant's residence. (*Id.*). The Government has made no objection to this request. To the extent the Government has not already done so, the Government is directed to provide all data and information which is discoverable under Rule 16.

*Rules 404(b), 608, and 609 Evidence*

Defendant moves for disclosure of any evidence of prior crimes or bad acts the Government intends to introduce at trial pursuant to Federal Rule of Evidence 404(b). (Dkt. No. 24, ¶¶ 53-58). Defendant also moves for pre-trial disclosure of impeachment evidence pursuant to Federal Rules of Evidence 608 and 609. (*Id.*) The Government states that it will provide reasonable notice in advance of trial of the general nature of prior uncharged crimes that it intends to use at trial under Rule 404(b). It further submits that it has no obligation to provide pre-trial notice of impeachment evidence under Rules 608 and 609 but states it will provide notice at the time it is ordered to do so by the trial court. The Government has preliminarily notified defendant it intends to use all prior criminal conduct, acts, or wrongs pursuant to Rule 404(b). The Government states that should it become aware of additional Rule 404(b), Rule 608, or Rule 609 evidence, it will notify defendant in advance of trial.

The Government is required to provide "reasonable notice in advance of trial" of the general nature of prior uncharged crimes or bad acts it intends to introduce against a defendant. *See* Fed. R. Evid. 404(b). Rule 608 of the Federal Rules of Evidence does not contain the same pre-trial notice requirement. Based upon the Government's representation that it will disclose bad act or impeachment evidence prior to trial, defendant's motion is denied as moot. The Court instructs that any disclosure should be done in accordance with the District Court's pre-trial order. The issue of admissibility of evidence pursuant to Federal Rules of Evidence 404(b), 608, and 609 is left to the determination of the District Court at the time of trial.

<u>*Early Disclosure of Witness Statements and Jencks Act Material*</u>

Defendant moves for early disclosure of witness names and statements prior to trial. (Dkt. No. 24, ¶¶ 59-64). The Government has no general duty to disclose the identities of its witnesses before trial. *United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir. 1990). Section 3500 of Title 18 of the United States Code requires that the Government, on motion of defendant, disclose a Government witness's prior statements that are in the Government's possession and relate to the subject matter of the witness's direct testimony. *See also Jencks v. United States*, 353 U.S. 657 (1957); Fed. R. Crim. P. 26.2 (procedure for producing a witness statement). A witness statement is defined as: (1) a written statement by a witness that is signed or otherwise adopted or approved by the witness; (2) a substantially verbatim recording or transcription of a witness's oral statement; or (3) any statement however taken or recorded made by the witness to the grand jury. 18 U.S.C. 3500(e).  Statements are not required to be produced, by law, until after the witness has testified on direct examination, and the Court cannot mandate that they be produced sooner. *See* 18 U.S.C. §3500(a); Fed. R. Crim. P 26.2(a).

The Government indicates that it will disclose all 3500 material sufficiently prior to trial to allow defendant adequate time to prepare and, in accordance with the District Court's pre-trial order, to permit the Court to conduct the trial in an orderly and efficient manner. In light of these representations, defendant's request for early disclosure of witness statements is denied as moot.

<u>*Rough Notes*</u>

Defendant moves for an order requiring all government agents and officers to retain and preserve all rough notes taken in the course of the investigation in the event

they later become discoverable. (Dkt. No. 24, ¶ 65-68). The Government objects that defendant's request covers material that may not be *Jencks* material and so may exceed the Government's obligations under 18 U.S.C. § 3500 and Fed. Crim. P. 26.2. (Dkt. No. 26, pgs. 21-22). The Court grants defendant's motion and the Government is directed to preserve all rough notes and items of evidence. *See United States v. Jones*, 13-CR-193, 2014 U.S. Dist. LEXIS 84452, at *16 (W.D.N.Y. May 29, 2014), *report and recommendation adopted*, 2014 U.S. Dist. LEXIS 84023 (W.D.N.Y. June 19, 2014), (quoting *United States v. Coates*, 11-CR-27, U.S. Dist. LEXIS 105689, 2013 WL 3897484, at *5 (W.D.N.Y. July 29, 2013)).

### Leave to File Additional Motions

Defendant also moves to preserve his right to make further and additional motions. (Dkt. No. 24, ¶ 69). To the extent defendant intends to bring motions based upon new rulings, information or evidence, his requests for leave to file additional motions are granted. To the extent defendant intends to bring motions concerning issues that could have been raised prior to the previous motion deadline, defendant's request is denied without prejudice to bringing the motion upon a showing of good cause for the untimely filing.

### Government's Request for Reciprocal Discovery

The Government moves for reciprocal discovery pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure including the opportunity to inspect, copy or photograph books, papers, documents, photographs, tangible objects or copies or portions thereof which are in the possession, custody or control of the defendant and which the defendant intends to introduce as evidence at trial, as well as the results or

reports of any physical or mental examinations or scientific tests or experiments made in connection with the case. (Dkt. No. 26, pgs. 22-23). The Government's motion for reciprocal discovery is granted, and defendant is reminded that his disclosure obligations continue up through and during trial. *See* Fed. R. Crim. P. 16(c).

**<u>CONCLUSION</u>**

For the foregoing reasons, it is recommended that Defendant's motions to suppress and motion to dismiss be denied. (Dkt. No. 24). It is ordered that Defendant's omnibus discovery demands and the Government's reciprocal discovery demands (Dkt. No. 26) are decided in the manner detailed above.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report, Recommendation and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Vilardo, any objections to the recommendations portion of this Report, Recommendation and Order must be filed with the Clerk of Court within fourteen days of service of this Report, Recommendation and Order in accordance with the above statute, Rules 59(b), 45(a), and 45(c) of the Federal Rules of Criminal Procedure, and Local Rule of Criminal Procedure 59. Any requests for an extension of this deadline must be made to Judge Vilardo.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report, Recommendation and Order WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the

Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Criminal Procedure 59(c)(2), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

SO ORDERED.

Dated:  February 27, 2023
Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge