UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | 21-CR-20-LJV |
| v. | DECISION AND ORDER |
| DAVID LETTIERI, | |
| Defendant. | |

_____

## **INTRODUCTION**

On June 14, 2023, a jury convicted the defendant, David Lettieri, on the only count with which he was charged: Enticement of a Minor in violation of 18 U.S.C. § 2422(b).  *See* Docket Items 146, 150.  After this Court granted Lettieri two extensions of time to file posttrial motions, Docket Items 152-155, he moved for a judgment of acquittal or a new trial on July 27, 2023, Docket Item 157.  On August 9, 2023, the government responded to that motion, Docket Item 159, and on August 25, 2023, Lettieri replied, Docket Item 162, 163 (corrected reply).  Two weeks later, this Court heard oral argument.  Docket Item 166.

For the reasons that follow, Lettieri's motion is denied.

## **TRIAL EVIDENCE**[1]

In October 2020, Lettieri, then thirty-three years old, began communicating by computer with A.B., a thirteen-year-old girl. *See generally* Gov't Ex. 5 (complete Facebook records); Gov't Exs. 5A and 5C (redacted and unredacted Facebook communications). The communications, many of which were sexually graphic, involved A.B.'s desire to have a child and Lettieri's interest in helping her do that. *See, e.g.*, Gov't Ex. 5C at 10; *see also* Docket Item 164 at 26, 33. Among other things, Lettieri requested and received photos of A.B. clothed and unclothed; discussed what A.B. should and should not wear when they met to consummate their plan; described exactly what he would like to do and how he would like to do it; and arranged to meet at a convenient time and at a place near A.B.'s home. *See generally* Gov't Exs. 5A and 5C; Docket Item 164 at 29-61; 67.

Lettieri and A.B. planned to meet on October 12, 2020, the Columbus Day holiday when A.B. would not be in school; that morning, Lettieri drove about three hours from his home in Harpursville, New York, to Bliss, New York, where A.B. lived. Docket Item 164 at 50-51, 81; Gov't Ex. 4. But A.B. apparently got cold feet as the time to meet got closer and told her older sister about the plan. *See generally* Docket Item 159 at 8-9 (government memorandum recounting not-yet-transcribed trial testimony). So instead of meeting A.B. as he expected, Lettieri met Matthew Putman, the boyfriend of A.B.'s

---

[1] On a motion under Rule 29, the court "views the evidence in the light most favorable to the government, crediting any inferences that the jury might have drawn in its favor." *United States v. Landesman*, 17 F.4th 298, 305 n.1 (2d Cir. 2021) (citing *United States v. Rosemond*, 841 F.3d 95, 99-100 (2d Cir. 2016)). On a motion under Rule 33, the court examines all facts and circumstances to make an objective evaluation. *Id.* (citing *United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013)).

sister, and was told that the planned rendezvous would not happen.  *See generally id.* at 8-9; Gov't Ex. 21 at 2.  As Lettieri drove home that day, he messaged A.B. "thanks for the lying BS," and all communication between Lettieri and A.B. ended.  Docket Item 164 at 68; Gov't Ex. 5C at 77.

After A.B.'s parents told the police about the interaction between A.B. and Lettieri, law enforcement applied for and obtained warrants to arrest Lettieri and to search his home.  *See* Docket Item 164 at 70.  After his arrest on November 5, 2020, Lettieri waived his *Miranda* rights and spoke with law enforcement.  *See* Gov't Exs. 19, 20, and 20A.  In essence, Lettieri admitted he communicated with A.B. and drove to meet her, but he said that he intended only to "talk some sense into her" and to be a "Good Samaritan."  *See* Gov't Ex. 21; Gov't Ex. 20A at 4.

## DISCUSSION

**I.     RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL**

After a jury verdict, a defendant may challenge the sufficiency of the evidence presented at trial by moving for a judgment of acquittal under Federal Rule of Criminal Procedure 29(c)(1).  Convincing a court to set aside a verdict, however, is no easy task.  A jury's verdict will withstand a Rule 29 challenge as long as "any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also United States v. Desena*, 260 F.3d 150, 154 (2d Cir. 2001).  The court views the evidence in the light most favorable to the government, *see United States v. Coté*, 544 F.3d 88, 98 (2d Cir. 2008), and draws all inferences in the government's favor, *see United States v. Puzzo*,

928 F.2d 1356, 1361 (2d Cir. 1991). And the court may not substitute its own judgment on credibility or the weight of the evidence for what the jury decided. *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000).

Lettieri argues that he is entitled to a judgment of acquittal for two reasons. First, he argues that no one who was present in Bliss, New York, when he arrived to meet A.B. identified him at trial. *See* Docket Item 157 at ¶¶ 10-11. Second, he argues that because both he and A.B. communicated with each other from their homes in New York State, "there was insufficient evidence at trial to establish the interstate nexus that is required" for conviction. *Id.* at ¶¶ 12-13. Both arguments lack merit.

### A.     Identification

Lettieri is correct that no one present at the time and place of the scheduled meeting between him and A.B. in Bliss, New York, identified him at trial. But there still was more than enough evidence for the jury to conclude beyond a reasonable doubt that he was the person who communicated about having sex with A.B. and then drove to meet her for that purpose.

First, FBI Special Agent Randall Garver, who interviewed Lettieri and discussed the communications and the trip to Bliss with him, indeed identified Lettieri at trial.[2] Docket Item 164 at 73-74. As noted above, Lettieri admitted to Garver that he had communicated with A.B. and traveled to Bliss to meet her. *Id.* at 81-82; *see* Gov't Exs. 20 and 21. So notwithstanding the fact that Putman, A.B., and A.B.'s sister—who were

---

[2] Garver testified that Lettieri's appearance had changed somewhat between the time of Lettieri's arrest and the trial. Docket Item 164 at 73-74. Specifically, Lettieri was not wearing glasses at trial and had cut his hair. *Id.* at 74. Nevertheless, Garver identified him as the person he arrested on November 5, 2020.

present when someone came to Bliss to have sex with A.B.—were not asked to, and did not, identify Lettieri as that someone, there was sufficient proof for the jury to find beyond a reasonable doubt that the person who traveled to meet A.B. was Lettieri.

What is more, Putman showed the police a Facebook photo of the person he confronted in Bliss on October 12, 2020, Gov't Ex. 3, and Garver confirmed that Lettieri was the person in that photo, Docket Item 164 at 74-75.  All that, combined with the extensive evidence linking Lettieri with the Facebook account and cell phone number used to communicate with A.B., was more than enough to permit a reasonable juror to conclude beyond a reasonable doubt that Lettieri, the defendant in the courtroom, was the person who enticed A.B. and traveled to her hometown to follow up on that enticement.

### B. Interstate Nexus

Lettieri says that because "the principals were located entirely within the State of New York," the evidence was insufficient for the jury to find the required "interstate nexus."  See Docket Item 157 at ¶¶ 12-13.  Again, he is incorrect.

To be sufficient to sustain a conviction under 18 U.S.C. § 2422(b), the proof need not establish that any communication actually crossed state lines.  See *United States v. D'Andrea*, 440 F. App'x 273, 274 (5th Cir. 2011) ("The facility or means of interstate commerce provision is an element of the offense; but interstate communication is not required by the statute.").  Instead, as long as there is proof that some facility of interstate commerce was used, the evidence is sufficient to support a conviction.  See, e.g., *United States v. Weisinger*, 2013 WL 3246138, at *2 (D. Vt. June 26, 2013) (interstate nexus found where defendant and victim were located in the same

household in the same state because their communications, and the image of child pornography itself, travelled in interstate commerce through cell phone messages and the Internet).

Indeed, the pattern jury instruction tells the jury that the government must prove beyond a reasonable doubt only that the defendant used a facility or means of interstate commerce, not that the defendant actually communicated with someone who was outside the state.  3 Leonard B. Sand et al., *Modern Federal Jury Instructions-Criminal*, ¶ 64.03, Instr. 64-12 (2023).  And the Second Circuit has held that the Internet and cell phones are deemed to be facilities of interstate commerce.  *See United States v. D'Amelio*, 683 F.3d 412, 422-423 (2d Cir. 2012) (explaining that both the Internet and a telephone qualify as a "facility or means of interstate commerce" for purposes of Section 2422(b)); *see also United States v. Giordano*, 442 F.3d 30, 39 (2d Cir. 2006) (holding that intrastate use of a telephone constitutes "using . . . any facility or means of interstate . . . commerce").

Here, there was ample proof that Lettieri used his cell phone and the Internet to communicate with A.B.  Records from Lettieri's cell phone carrier, T-Mobile, evidenced communications between Lettieri's phone and A.B.'s phone, Gov't Exs. 6 and 6A, and the cell phone seized from Lettieri when he was arrested corroborated that proof, Gov't Ex. 10A.  Moreover, a T-Mobile representative authenticated those phone records and testified that the number 631-942-2356—which was used to communicate repeatedly with the phone that A.B. used, *see* Gov't Exs. 6, 6A, 10C—was assigned to an account in Lettieri's name, *see* Docket Item 144; Gov't Exs. 6, 6A.  Likewise, Facebook records showed that the account registered as "david.c.lettieri" repeatedly communicated with

A.B.'s Facebook account, see Gov't Ex. 5, and a Facebook records custodian authenticated those records and testified that Facebook communications are transmitted via the Internet and cellphone service, see Docket Item 143; Gov't Ex. 5.

In sum, there was ample proof for a reasonable juror to find beyond a reasonable doubt that Lettieri used a facility or means of interstate commerce.

### C.  Other Elements

Lettieri also generally "renew[s]" his "Rule 29 motion made on the record in open court during trial." See Docket item 157 at ¶ 14. Although Lettieri's failure to develop that argument is probably good reason to summarily reject it, see, e.g., *United States v. Botti*, 711 F.3d 299, 313 (2d Cir. 2013) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived" (citation omitted)), the Court briefly addresses the other elements of the crime of conviction.

#### 1. Attempt to Persuade

There was ample proof for a reasonable juror to find beyond a reasonable doubt that Lettieri attempted to persuade A.B. to engage in sexual activity. The text messages and Facebook exchanges were often graphic communications in which Lettieri told A.B. what he planned to do to her and how he planned to do it. *See generally* Gov't Ex. 5. He offered to get "a hotel room so [they] could take a shower together" and because intercourse "in a car isn't fun." Gov't Ex. 5C at 13, 16. He suggested "sex standing up" and asked whether she "love[d] to be doggyed [sic]." *Id.* at 42. He said that he would buy a phone card for A.B. if she didn't change her mind about having sex and offered to get her Jack Daniels if she looked "cute." *Id.* at 13, 18. He told A.B. to wear a tank top

7

without a bra when they met, and he successfully convinced her to send photos of her naked breasts to him, including on his drive there "if you want me to speed." *Id.* at 63, 75.  And he followed up on his talk by driving to Bliss—where A.B. lived—to consummate the plan.  *Id.* at 68-77; Gov't Exs. 20 and 21.

While Lettieri told investigators that his real plan was to talk some sense into A.B., the jury was free to reject that explanation.  *United States v. Han*, 66 F. Supp. 2d 362, 365–66 (N.D.N.Y. 1999) (the jury, "as factfinder, was entitled to reject defendant's explanation" of his state of mind with respect to the age discrepancy between him and his intended victim).  And they did.  Regardless, the evidence was sufficient for the jury to find that Lettieri induced, enticed, or coerced A.B. to engage in sexual activity or that he attempted to do so.

### 2. Criminal Sexual Activity

The evidence also was sufficient for a reasonable juror to find that the sexual activity Lettieri attempted to entice was a crime under New York law.  First, because Lettieri was over the age of eighteen,[3]  and A.B. was under fifteen, Gov't Ex. 5A at 8, intercourse between them would have constituted rape in the second degree in violation of N.Y. Penal Law § 130.30(1).  Likewise, because Lettieri was twenty-one or older and A.B was under seventeen, intercourse between them would have violated N.Y. Penal Law § 130.25(2), rape in the third degree.  Finally, because A.B. was younger than fourteen years old, sexual contact even short of intercourse would have been sexual abuse in the second degree in violation of N.Y. Penal Law § 130.60(2).

---

[3] Lettieri was thirty-three years old in October 2020.  Docket Item 159 at 7.

Lettieri asked the Court to require a unanimous jury finding of the crime or crimes under New York law that the jury found would have been violated, and the Court granted that request. *See* Docket item 150 at 2. The jury then unanimously found that the sexual activity Lettieri attempted to entice A.B. to engage in would constitute all three crimes under New York law. *See id.* And there is no reason to question those findings.

### 3. Age and Knowledge of Age

Finally, there was sufficient evidence for a reasonable juror to find that A.B. was younger than eighteen years old and that Lettieri knew it. Several witnesses, including A.B. herself, testified at trial that A.B. was under eighteen. Docket Item 159 at 7. In a Facebook communication, A.B. told Lettieri that she was "almost fourteen," Gov't Ex. 5A at 8, and Lettieri told Garver that he knew she was a minor, Docket Item 164 at 81-82. Indeed, Lettieri's explanation of the communications and the attempted encounter—that his real plan was to talk some sense into A.B.—necessarily suggests that he knew she was underage. *See* Gov't Ex. 21. So there is no reason to question the sufficiency of the evidence on those elements.

## II.   RULE 33 MOTION FOR A NEW TRIAL

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). While a district court may grant a new trial if the evidence does not support the verdict, that discretion should be exercised "sparingly" and only in "the most extraordinary of circumstances." *United States v. Archer*, 977 F.3d 181, 187 (2d Cir. 2020) (citing *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001)).

The Second Circuit recently clarified that "a district court may not grant a Rule 33 motion based on the weight of the evidence alone unless the evidence preponderates heavily against the verdict to such extent that it would be 'manifest injustice' to let the verdict stand." *Id.* at 187-88 (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)). Under that standard, unless the evidence was patently incredible or defied physical realities, or unless an evidentiary or instructional error compromised the reliability of the verdict, a district court must defer to the jury's resolution of conflicting evidence. *Id.* at 188 (internal citations and quotation marks omitted). In other words, before a court can grant a Rule 33 motion, "[t]here must be a real concern that an innocent person may have been convicted." *Ferguson*, 246 F.3d at 134 (citing *Sanchez*, 969 F.2d at 1414).

This Court has no such concern here. For the same reasons that this Court found the evidence sufficient to convict Lettieri, *see supra*, it does not find his Rule 33 arguments persuasive. On the contrary, the Court found the evidence against him to be compelling. Lettieri therefore is not entitled to a new trial based on any issue that he raises or in the interest of justice.

**CONCLUSION**

For all those reasons, Lettieri's Rule 29 and Rule 33 motions, Docket Item 157, are DENIED. The Court will set a date for sentencing.

SO ORDERED.

Dated:   October 6, 2023
         Buffalo, New York

_____
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE